IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**NATHANIEL COLE BREAZEALE**                                                   **MOVANT**

**v.**                            **No. 1:18CR56-SA-DAS**

**UNITED STATES OF AMERICA**                                          **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Nathaniel Cole Breazeale to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.*

### Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**[1]

On May 16, 2018, a grand jury returned an indictment charging Nathaniel Cole Breazeale with possession of a firearm by a prohibited person (unlawful user of a controlled substance) in violation of 18 U.S.C. § 922 (g)(3); possession of a firearm which was not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861 (d); and carrying and using a firearm in and near a school zone in violation of 18 U.S.C. § 922(q)(2)(A).

On November 7, 2018, Breazeale pled guilty to Count One of the Indictment under a plea agreement which provided for the dismissal of Counts Two and Three at the conclusion of sentencing. The government presented the factual basis during the change of plea hearing:

> If this matter went to trial, we expect the evidence would show that on March 28, 2018, a 911 call was placed to Webster County, Mississippi Emergency Services in reference to a shooting at Eupora High School. Witnesses at the scene described the shooter as a white male with blond hair with the side of his head shaved riding a red dirt bike.
>
> An eyewitness stated the driver of the motorcycle extended a handgun toward the school with his right hand and fired approximately six shots. Multiple witnesses positively identified the shooter as Cole Breazeale through photographic lineups that were prepared by law enforcement.
>
> Law enforcement officers responded to the school and located six 9-millimeter spent shell casings less than 500 feet directly behind the Eupora High School building on Martin Luther King, Jr., Drive. By statute, a school zone is defined in 18 U.S.C. 921(a)(25) as any area within 1000 feet of school grounds. So these casings were

---

[1] The court has drawn the recitation of the facts and procedural posture of this case, which are uncontested, from the government's response [52] to the instant motion to vacate, set aside, or correct sentence – with one exception. In its response, the government quoted the factual basis from a transcript of Breazeale's April 15, 2019, sentencing hearing. The transcript of that proceeding was not, however, placed on the docket.

As such, the court has, instead, quoted the factual basis presented at Breazeale's November 7, 2018, change of plea hearing. Doc. 37 at 15-18. Breazeale agreed with the factual basis from his change of plea hearing, and that factual basis is substantially identical to the one presented during his sentencing – as quoted by the Government in its Response to the § 2255 motion. *See* Doc. 52 at 2-4.

located well within the statutory definition of a school zone.

During the follow-up investigation by law enforcement, multiple state search warrants were conducted in Webster County, Mississippi, and Nathaniel Cole Breazeale was arrested later that day in Webster County for the school shooting.

On March 29th, 2018, Mr. Breazeale was Mirandized and interviewed by MBI Agent Jamie Flake and FBI Special Agent Chris Cheatham at the Webster County Sheriff's Department in Eupora. During that interview, Mr. Breazeale confessed that he had discharged the handgun near Eupora High School on March 28th.

Mr. Breazeale advised that he had disposed of the handgun in a creek off Cummings Road in rural Webster County. Although law enforcement officers later searched the creek, there had been torrential rains, storms, and tornado warnings in the hours prior to the search, and no gun was located.

Later that same day, ATF Special Agent Joseph Frank interviewed Mr. Breazeale in the presence of Special Agent Cheatham and Agent Flake at the Webster County Jail. After acknowledging his *Miranda* rights and agreeing to talk to Mr. Frank, Mr. Breazeale stated that he had been smoking marijuana since 2015 and usually smoked approximately three blunts a day.

Mr. Breazeale also stated that he had frequently used methamphetamine in the past. This is corroborated by an incident in January of 2017 when Mr. Breazeale was arrested by the Mississippi Highway Patrol while in possession of approximately 9 grams of methamphetamine, marijuana, and a pistol.

During the interview, Special Agent Frank asked Mr. Breazeale about a Ruger .22-caliber rifle that had been recovered from a safe in Mr. Breazeale's bedroom during the execution of a search warrant following the incident at Eupora High School. Mr. Breazeale stated that the .22-caliber rifle was his, that he had removed the stock from the rifle, and that the firearm worked.

Mr. Breazeale also claimed ownership of a Yugoslavia 7.62-caliber rifle that was recovered from the residence and indicated that he hoped to get it back once he got out of jail. During the search of the residence, officers also recovered additional 9-millimeter ammunition and 7.62-caliber ammunition.

Special Agent David Erhart, an ATF firearms interstate nexus expert, examined both the firearms mentioned above and determined that they were manufactured outside the state of Mississippi and had therefore moved in interstate commerce.

In addition, ATF Firearms Interstate Nexus Expert Special Agent Braden Theobald examined the six 9-millimeter shell casings recovered at Eupora High School and found that all six shell casings were manufactured outside the state of Mississippi as well.

> And, finally, we'd ask the Court to take judicial notice of the fact that Webster County lies within the Northern Judicial District of Mississippi.

Doc. 37 at 15-18.

On April 15, 2019, the court held a sentencing hearing. After hearing testimony from witnesses and arguments from counsel, the court sentenced Breazeale to a term of 71 months imprisonment on Count One, $800 in restitution and 3 years of supervised release. On August 10, 2020, Breazeale filed the instant *pro* se motion to vacate.

### Breazeale's Ground for Relief

Breazeale argues that the Supreme Court decision in *Rehaif v. United States*, U.S , 139 S.Ct. 2191, 2194, 204 L.Ed.2d 594 (2019) is retroactive to cases on collateral review and requires that the Government prove that the defendant knew he was prohibited from possessing a firearm. Breazeale argues that the Government did not provide such proof, and, as such, his conviction should be vacated.

The decision in *Rehaif* is retroactive to his case, as the Fifth Circuit Court of Appeals has explicitly held. *United States v. Kelley*, 40 F.4th 250, 251-52 (5th Cir. 2022). Prior to *Rehaif*, all circuit courts of appeal had been unanimous in holding that the knowledge requirement of 922(g) did not apply to the fact of a defendant's status as a member of a group prohibited from possessing a firearm (felons in *Kelley*). *Id.* *Rehaif* requires such proof (knowledge of membership in the group); however, it does *not* require proof that the defendant knew he could not possess a firearm. *See United States v. Trevino*, 989 F.3d 402, 403 (5th Cir. 2021) (§ 922(g) does not require proof that defendant knew he could not possess a firearm). The Fifth Circuit noted:

> Our cases applying *Rehaif* have not required the Government to prove knowledge of the statutory prohibition contained in 922 (g). And our sister circuits have uniformly

rejected the argument that *Rehaif* requires such proof. *Trevino*, 989 F.3d 405 (citations omitted).

Under *Rehaif*, the government must show that a defendant possessed a firearm and "knew he belonged to the relevant category of persons barred from possessing a firearm." *United States v. Montgomery*, 974 F.3d 587, 590 (5th Cir. 2020) *citing to Rehaif*, 139 S.Ct. at 2200. Indeed, "demonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons." *Montgomery*, 974 F.3d at 591 *citing to United States v. Lavalais*, 960 F.3d 180, 186 (5th Cir. 2020). The same reasoning applies in the instant case, as unlawful narcotics users typically know they are unlawful narcotics users.

In the present case, abundant evidence supports the finding that Cole Breazeale knew that he was an unlawful narcotics user. He admitted daily drug use to interviewing agents at the time of his arrest, and confirmed such use in his factual basis during his change of plea. He admitted smoking approximately three marijuana blunts per day and frequently using methamphetamine. PSR, ¶13. During a later interview by the Probation Service to prepare the Presentence Investigation Report, Breazeale acknowledged his drug use – giving information consistent with the facts presented at change of plea hearing and in his factual basis. Indeed, Breazeale possessed methamphetamine *while in custody for these charges*, admitted methamphetamine use while incarcerated – and tested positive for marijuana and methamphetamine on May 21, 2018. PSR, ¶ 42, 50, and 51. Simply put – Breazeale was aware of his status as an illegal narcotics user. *See Lavalais*, 960 F.3d at 187 (defendant had failed to show he was unaware of his status as a convicted felon when he had admitted it in factual basis for his plea and confirmed it at arraignment). As the record makes clear, this argument is without substantive merit.

**Conclusion**

In sum, the *Rehaif* decision does not affect the outcome of the instant case. The government presented evidence showing that Breazeale knew he was a member of a particular class (illegal narcotics user) – and that he possessed a firearm. Under *Rehaif*, that is all the government must prove to support a conviction for possession of a firearm by a prohibited person under 18 U.S.C. § 922(g). The Government need not prove that he knew he was prohibited from possessing a firearm. As such, the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 25th day of August, 2023.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE